IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| Shamario Brown,<br><br>           Plaintiff,<br><br>   v.<br><br>City of Champaign, Illinois, a municipal corporation, Detective Jeremiah Christian, Detective Dustin Sumption, Detective Benjamin Newell, and Sergeant Dennis Baltzell, and unknown officers from the Champaign Police Department,<br><br>           Defendants. | Case No. 19-cv-2004<br><br>JURY TRIAL DEMANDED |

NOW COMES, Shamario Brown ("Plaintiff"), through his attorneys, Nathan & Kamionski LLP, and states and alleges as follows:

**Introduction**

1. This is an action for civil damages brought pursuant to 42 U.S.C. §1983 seeking redress for the deprivation of Plaintiff's constitutional rights arising from a murder prosecution brought against him without probable cause and without regard for his actual innocence. Plaintiff ultimately lost six months of his life and faced the jeopardy of life in prison as a result of shocking misconduct by police officers that included witness manipulation, fabrication of evidence, suggestive identification procedures, and the withholding of material exculpatory evidence.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Central District of Illinois.

3. Shamario Brown is a United States citizen and a resident of Illinois.

4. Defendants Jeremiah Christian, Dustin Sumption, Detective Benjamin Newell, and Sergeant Dennis Baltzell ("Defendant Officers") are and were at all relevant times duly appointed Champaign Police Officers employed by the City of Champaign, Illinois, acting in the capacity of sworn law enforcement officials and therefore acting under color of law and within the scope of their employment.

5. The Defendant, City of Champaign, Illinois (hereinafter "City"), at all relevant times, was an Illinois Municipal Corporation, duly chartered and organized under the Laws of the State of Illinois, located entirely within this judicial district.

**The Crime At Issue**

6. On June 12, 2016, Ericka Cox-Bailey tragically died after she was struck with a .45 caliber bullet while she was walking in the area of Francis Drive and McKinley Avenue in Champaign, Illinois.

7. The initial police investigation into the shooting identified a white Oldsmobile Alero that was driven by a known gang member, Caprice "Chevy" Pearson, as the vehicle from which the shots were fired.

**Suspects Pearson and Clark Are Given A Pass**

8. Champaign police officers and detectives arrested Pearson and his friend, Dizhon Clark, in the late hours of June 12, 2016, and interviewed them into the early morning hours of June 13, 2016. During this time, Defendants Christian, Sumption, and Baltzell would turn on and off the video recordings of the interviews as they saw fit and in violation of Illinois law that requires electronic recording of all custodial interrogations of homicide suspects.

9. Defendant Officers quickly, baselessly, and wrongly came to a false hypothesis that Plaintiff must have been the shooter in this case based on nothing more than their knowledge of his association with Pearson and their frustration that Plaintiff was acquitted in 2015 in connection with a different shooting that the Champaign Police Department had investigated.

10. Focusing exclusively on Plaintiff, Defendant Officers failed to conduct gunshot residue testing on Pearson or Clark, even though these suspects were in the custody of Defendant Officers within the time frame where gunshot residue testing would have been appropriate.

11. Defendant Officers ordered a full battery of DNA and fingerprint testing on the Alero and shell casings located within the Alero. The physical evidence has now established that Plaintiff was never within the Alero when the shooting occurred.

12. In the early morning hours of June 13, 2016, Defendants Christian, Sumption, and Newell interviewed Pearson and Clark separately, each of whom denied knowledge of the shooting.

13. In violation of Illinois law, Defendants Christian, Sumption, and Baltzell shut off the video recording of Pearson's interrogation and proceeded to pressure Pearson to falsely implicate Plaintiff.

14. Upon information and belief, Defendant Officers showed Pearson and Clark a Facebook photograph of Plaintiff and threatened Pearson and Clark that they would be charged with the shooting if they did not identify Plaintiff as the shooter.

15. In addition, upon information and belief, Defendant Officers promised Pearson and Clark that they would receive no jail time if they identified Plaintiff as the shooter.

16. As a result of Defendant Officers' threats and promises, Pearson and Clark eventually falsely identified Brown and were themselves never charged with crimes associated with Cox-Bailey's death.

17. Defendant Officers' coercive and suggestive interrogation tactics, suggestive identification procedures, and promises of leniency with respect to Pearson and Clark were withheld from Plaintiff and his criminal defense counsel.

### The Police Hypothesis of Plaintiff's Involvement Unravels

18. On June 17, 2016, Defendants Sumption, Christian, and Baltzell interviewed Monyeil Turner, who explained that he was walking down the street at the time of the shooting and he believed that he was likely the intended target of the shooting.

19. Moreover, Turner affirmatively told Defendants Sumption, Christian and Baltzell that he knew Plaintiff and that Plaintiff was not in the Alero at the time of the shooting. The only person Turner identified as being in the back seat of the Alero was a man named O'Shea Cotton.

20. In fact, Defendants Sumption, Christian, and Baltzell further learned that their theory of Plaintiff's involvement in the shooting was false when, on June 22, 2016, Detective Christian interviewed an unnamed female witness who said the shooter was in the front passenger seat—the place where Clark was sitting—and she did not even see anyone else shooting. Upon information and belief, the identity of this unnamed female witness was withheld by Defendants from Plaintiff and his criminal defense counsel.

21. Plaintiff was arrested by Detectives Christian and Sumption on July 7, 2016. Plaintiff denied any involvement in the shooting and continues until this day to deny any involvement due to his actual innocence.

**Fabricated Statements by O'Shea Cotton and Takario Greene**

22.    Despite possessing the knowledge that Pearson and Clark's identification of Plaintiff was false and procured through improper means, Defendant Officers sought to bolster their false narrative through fabricated and coerced statements from Takario Greene and O'Shea Cotton.

23.    On July 12, 2016, Detectives Christian and Sumption interviewed Takario Greene, who admitted that he was in the back seat of the Alero at the time of the shooting but told them that Plaintiff was not the shooter. Nevertheless, Detectives Christian and Sumption knowingly procured a false statement from Greene that Plaintiff was the shooter by suggesting to Greene that he would receive leniency if he would falsely identify Plaintiff as the shooter.

24.    Similarly, on July 14, 2016, Detectives Christian and Sumption interviewed O'Shea Cotton, who told them that Plaintiff was not one of the shooters. Nevertheless, Detectives Christian and Sumption knowingly procured a false statement from Cotton that Plaintiff was the shooter by suggesting to Cotton that he would receive leniency if he would falsely identify Plaintiff.

25.    On February 3, 2017, after spending approximately 6 months awaiting trial in Champaign County Jail, Plaintiff was acquitted of all charges in connection with the shooting. During this time, Plaintiff lost not only his liberty but also lost the opportunity to see his child being born into this world.

## COUNT I—42 U.S.C. § 1983
### Due Process Violations
### (Against Defendant Officers)

26. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

27. As describe more fully above, the Defendant Officers deliberately and affirmatively failed to disclose material and exculpatory information pertaining to their investigations with respect to Plaintiff. Consistent with that endeavor, Defendant Officers unlawfully suppressed information that would have implicated others and thereby exonerated Plaintiff.

28. For instance, upon information and belief, Defendant Officers withheld the fact that they showed Pearson and Clark a Facebook photograph of Plaintiff prior to the time that they had these suspects falsely identify Plaintiff as the shooter.

29. Defendant Officers further failed to disclose the manner in which they procured an identification of Plaintiff from Pearson, Clark, Cotton, and Greene as described herein. This unconstitutional conduct included, but was not limited to, withholding knowledge of the existence of consideration provided to key witnesses and withholding knowledge of the threats provided to key witnesses, the circumstances of which would have been exculpatory to Plaintiff.

30. Additionally, the police reports of Defendant Officers regarding the false witness accounts they manufactured against Plaintiff were made with knowledge that said accounts were false and unreliable. In so doing, the Defendant Officers fabricated evidence, caused unreliable witness identifications to be admitted against Plaintiff at his criminal trial,

withheld material exculpatory information, deprived Plaintiff of his liberty without probable cause, and deprived Plaintiff of his right to a fair trial.

31.     In this way, Defendant Officers manufactured and fabricated "evidence" that falsely implicated Plaintiff. This fabrication of evidence included, but was not limited to, unlawfully manipulating the witnesses described herein, and getting several witnesses to falsely implicate Plaintiff by means of improper suggestive and otherwise unreliable lineups, all of which violated Plaintiff's constitutional rights under the Fourteenth Amendment, and then attempted to suppress this evidence before and during Plaintiff's trial and until this day.

**COUNT II—42 U.S.C. § 1983**
**Deprivation of Liberty without Probable Cause**
**(Against Defendant Officers)**

32.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

33.     In the manner described more fully above, the Defendant Officers, individually, jointly, and in conspiracy with one another, and other still unknown co-conspirators, manufactured false evidence in order to accuse Plaintiff of criminal activity and cause the institution and continuation of criminal proceedings against Plaintiff and his continued detention, without probable cause.

34.     In so doing, Defendant Officers caused Plaintiff to be deprived of his liberty without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

35.     Defendant Officers initiated and continued judicial proceedings against Plaintiff maliciously, resulting in Plaintiff being detained for approximately six (6) months without probable cause.

36. The Defendant Officers' actions were taken under color of law and within the scope of their employment.

37. The judicial proceedings against Plaintiff were terminated in his favor when he was acquitted at trial on February 3, 2017.

38. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

39. As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT III—42 U.S.C. § 1983
### Failure to Intervene
### (Against Defendant Officers)

40. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

41. In the manner described above, during the constitutional violations described herein, one or more of the Defendant Officers, stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

42. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered deprivation of his liberty, humiliation, fear, as well as severe emotional distress. Defendant Officers had ample, reasonable opportunities to prevent this harm but failed to do so. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

43.    As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT IV—42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights
### (Against Defendant Officers)

44.    Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

45.    The Defendant Officers acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

46.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

47.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts as described more fully above and were otherwise willful participants in joint activity.

48.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

49.    As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## Count V
### State Law Respondeat Superior Claim
### (Against City of Champaign)

50. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

51. Defendant Officers were, at certain times material to this complaint, employees of the Defendant City of Champaign, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant City of Champaign under state law pursuant to respondeat superior.

## Count VI
### State Law Statutory Indemnification Claim
### (Against City of Champaign)

52. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

53. Defendant Officers were, at certain times material to this complaint, employees of the Defendant City of Champaign and were acting within the scope of their employment. As such, under 745 ILCS 10/9-102, the City of Champaign must pay any tort judgment for compensatory damages that is adjudicated against Defendant Officers.

WHEREFORE, Plaintiff respectfully demands that judgment be entered in his favor and against Defendant Officers and the City of Champaign, Illinois, with respect to all counts set forth in this Complaint, that he be granted reasonable compensatory damages in an amount to be determined at trial, that punitive damages be awarded and assessed against Defendant Officers and that costs and attorneys' fees be assessed against the defendants.

**JURY DEMAND**

Plaintiff, Shamario Brown, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: January 9, 2019

Respectfully submitted,

/s/ Shneur Z. Nathan, Att. No. 6294495
Shneur Z. Nathan
Avi Kamionski
Natalie Adeeyo
Nathan & Kamionski LLP
33 W. Monroe, Suite 1830
Chicago, Illinois 60603
(312) 612-1955
snathan@nklawllp.com