E-FILED
Monday, 09 September, 2019  01:29:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **SHAMARIO BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cv-2004** |
| | ) | |
| **CITY OF CHAMPAIGN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## O R D E R

Plaintiff, Shamario Brown, filed his Complaint (#1) on January 1, 2019, against Defendants City of Champaign, Illinois, Detectives Jeremiah Christian, Dustin Sumption, Benjamin Newell, Sergeant Dennis Baltzell, and unknown officers from the Champaign Police Department.  All named Defendants filed a Motion to Dismiss (#12) on January 30, 2019, Plaintiff filed a Response (#24) on February 13, 2019, and Defendants filed a Reply (#29) on February 20, 2019.  Defendants move to dismiss Counts I, IV, and V.  Defendants' Motion to Dismiss is ripe for ruling.  For the following reasons Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.  BACKGROUND

The following facts are drawn from the Complaint and are accepted as true for the purposes of this Order.  *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1095 (7th Cir. 2015).

Plaintiff alleges he was detained and prosecuted for murder without probable cause and without regard for his innocence.

Underlying the arrest and prosecution of Plaintiff is the June 12, 2016, shooting death of Ericka Cox-Bailey in Champaign, Illinois.  The initial police investigation identified a white Oldsmobile Alero, driven by known gang member Caprice "Chevy" Pearson, as the vehicle from which the shots were fired.

Champaign police officers and detectives arrested Pearson and his friend, Dizhon Clark, in the late hours of June 12, 2016, and interviewed them into the early morning hours of June 13, 2016.  Pearson and Clark were interviewed separately, and each denied knowledge of the shooting.  During this time Defendants Christian, Sumption, and Baltzell turned off, and back on, the video recordings of those interviews, in violation of an Illinois law that requires electronic recording of all custodial interrogations of homicide suspects.

While the video recording mechanism was turned off, Christian, Sumption, and Baltzell pressured Pearson to falsely implicate Plaintiff.

Defendant Officers showed Pearson and Clark a Facebook photograph of Plaintiff and threatened Pearson and Clark that they would be prosecuted for the

2

shooting if they did not identify Plaintiff as the shooter.  Defendant Officers promised Pearson and Clark they would receive no jail time if they identified Plaintiff as the shooter.

Plaintiff alleges that "as a result of Defendant Officers' threats and promises, Pearson and Clark eventually falsely identified [Plaintiff] as the shooter and were themselves never charged with crimes associated with Cox-Bailey's death."

Defendant Officers' "coercive and suggestive interrogation [,] … identification procedures, and promises of leniency" were withheld from Plaintiff and his criminal defense counsel.

Plaintiff alleges that "Defendant Officers quickly, baselessly, and wrongly came to a false hypothesis that Plaintiff must have been the shooter in this case based on nothing more than their knowledge of his association with Pearson and Defendants' frustration that Plaintiff was acquitted in 2015 in connection with another shooting that the Champaign Police Department had investigated."

Defendant Officers did not conduct gunshot residue testing on Pearson or Clark. These suspects were in the custody of Defendant Officers within the timeframe where gunshot residue testing would have been appropriate.

Defendant Officers ordered DNA and fingerprint testing on the Alero, and on shell casings located in the Alero.  The physical evidence has now established that Plaintiff was not in the Alero when the shooting occurred.

On June 17, 2016, Defendants Sumption, Christian, and Baltzell interviewed Monyeil Turner, who said he was walking down the street at the time of the shooting and that he believed that he was likely the intended target of the shooting. Turner told Sumption, Christian, and Baltzell that he knew Plaintiff and Plaintiff was not in the Alero at the time of the shooting. The only person Turner identified as being in the back seat of the Alero was O'Shea Cotton.

On June 22, 2016, Detective Christian interviewed an unnamed female witness who said the shooter was in the front passenger seat – where Clark was sitting – and also said that she did not see anyone else shooting. Plaintiff alleges that the identity of this witness was withheld from him and his criminal defense counsel.

Plaintiff was arrested by Christian and Sumption on July 7, 2016. Plaintiff denied and continues to deny involvement with the shooting, and alleges he is innocent of any involvement with the shooting.

Plaintiff alleges Defendant Officers knew Pearson and Clark's identification of Plaintiff was false and procured through improper means.

Plaintiff alleges that with that knowledge, Defendant Officers then knowingly obtained fabricated and coerced statements from Takario Greene and O'Shea Cotton.

On July 12, 2016, Detectives Christian and Sumption interviewed Greene, who admitted that he was in the back seat of the Alero at the time of the shooting. Greene told the Detectives that Plaintiff was not the shooter. Christian and Sumption then knowingly procured a false statement from Greene that Plaintiff was the shooter by

4

suggesting to Greene that he would receive leniency if he would falsely identify Plaintiff as the shooter.

On July 14, 2016, Christian and Sumption interviewed O'Shea Cotton.  Cotton told them Plaintiff was not one of the shooters.  Christian and Sumption then knowingly procured a false statement from Cotton that Plaintiff was the shooter by suggesting to Cotton that he would receive leniency if he falsely identified Plaintiff.

On February 3, 2017, after spending about six months awaiting trial in jail, Plaintiff was acquitted of all charges in connection with the shooting.

Plaintiff alleges six Counts.

Plaintiff alleges "COUNT I–42 U.S.C. § 1983 Due Process Violations (Against Defendant Officers)."  Plaintiff incorporates the prior allegations, and further alleges "Defendant Officers deliberately and affirmatively failed to disclose material and exculpatory information pertaining to their investigations with respect to Plaintiff." And, "Defendant Officers unlawfully suppressed information that would have implicated others and thereby exonerated Plaintiff."  As an example, Plaintiff points to the allegation that Defendant Officers withheld the fact that before they had those suspects identify Plaintiff as the shooter, they showed Pearson and Clark a Facebook photograph of Plaintiff.

Plaintiff goes on to allege that Defendant Officers failed to disclose how they procured an identification of Plaintiff from Pearson, Clark, Cotton, and Greene as previously alleged, including "withholding knowledge of the existence of consideration

provided to key witnesses and withholding knowledge of the threats provided to key witnesses, the circumstances of which would have been exculpatory to Plaintiff."

Plaintiff also alleges the police reports written by Defendant Officers were made with knowledge of the false and unreliable witness accounts contained in them, and that, in doing so, "the Defendant Officers fabricated evidence, caused unreliable witness identifications to be admitted against Plaintiff at his criminal trial, withheld material exculpatory information, deprived Plaintiff of his liberty without probable cause, and deprived Plaintiff of his right to a fair trial."

In short, Plaintiff alleges Defendant Officers manufactured and fabricated evidence, falsely implicating Plaintiff as previously alleged and additionally through improper and suggestive and otherwise unreliable lineups, "all of which violated Plaintiff's constitutional rights under the Fourteenth Amendment, and then attempted to suppress this evidence before and during Plaintiff's trial and until this day."

Plaintiff alleges "COUNT II–42 U.S.C. § 1983 Deprivation of Liberty without Probable Cause (Against Defendant Officers)."  Plaintiff incorporates the prior allegations, and alleges that Defendant Officers "individually, jointly, and in conspiracy with one another, and other still unknown co-conspirators," instituted and continued criminal proceedings and continued detention against Plaintiff for six months.  Plaintiff alleges Defendant Officers did so intentionally, without probable cause, in total disregard of the truth, in an objectively unreasonable manner.

6

Plaintiff alleges "COUNT III−42 U.S.C. § 1983 Failure to Intervene (Against Defendant Officers)." Defendants do not move to dismiss Count III, which alleges a claim for failure to intervene.

Plaintiff alleges "COUNT IV−42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights (Against Defendant Officers)." Plaintiff incorporates the prior allegations, and further alleges that Defendant Officers "acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights…." Plaintiff alleges that the co-conspirators "conspired to accomplish an unlawful purpose by an unlawful means" by committing "overt acts … and … were otherwise willful participants in joint activity" and agreed to protect each other from liability for their wrongdoing. Plaintiff alleges the Defendants' misconduct was objectively unreasonable and was undertaken intentionally in total disregard for Plaintiff's innocence.

Plaintiff alleges "Count V State Law Respondeat Superior Claim (Against City of Champaign)," alleging that "Defendant Officers were at certain times material to this complaint, employees of the Defendant City of Champaign, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant City of Champaign under state law pursuant to respondeat superior."

Plaintiff alleges "Count VI State Law Statutory Indemnification Claim (Against City of Champaign)," alleging that "Defendant Officers were at certain times material to this complaint, employees of the Defendant City of Champaign and were acting within the scope of their employment.  As such, under 745 [Ill. Comp. Stat.] 10/9-102, the City of Champaign must pay any tort judgment for compensatory damages that is adjudicated against Defendant Officers."

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  Defendants' Motion to Dismiss Counts I, IV, and V

#### 1.  Motion to Dismiss Count I

Defendants argue Count I must be dismissed because Plaintiff's claims for wrongful pretrial detention may be brought solely under the Fourth Amendment. Plaintiff responds that he can maintain a due process claim for a *Brady* violation as well as a Fourth Amendment claim for wrongful detention.

A criminal defendant has a constitutional right to receive from the prosecution all material exculpatory evidence, in time for him to use it at trial. *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). "A corollary of the prosecution's duty to disclose to the defense is that the police must disclose exculpatory evidence to the prosecutors." *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016).

> To prevail on a civil *Brady* claim against an officer, an accused must show that (1) the evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice. [citation omitted] Prejudice requires proof that the failure to disclose caused a deprivation of the accused's liberty.

*Cairel*, 821 F.3d at 832.

Here, Plaintiff alleges Defendant Officers fabricated evidence against him, then suppressed exculpatory evidence related to the Officers' fabrication of evidence. Plaintiff was held in custody for approximately six months before he was acquitted. Plaintiff argues that he has therefore plead a due process claim for a *Brady* violation (in addition to his Count II Fourth Amendment wrongful detention claim).

Seventh Circuit precedent has undergone a recent shift regarding what category of constitutional violation wrongful pretrial detention falls under. Until recently, in this Circuit, a pretrial detainee could bring a § 1983 suit for a Fourth Amendment violation only until legal process was commenced against him – i.e., until the detainee was brought before a magistrate for a probable cause hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975). After the *Gerstein* hearing, the plaintiff's claim *had* to be brought pursuant to the Due Process Clause of the Fourteenth Amendment. Circuit precedent

held that "the scope of a Fourth Amendment claim is limited up until the point of arraignment." *Llovet v. City of Chi.*, 761 F.3d 759, 763 (7th Cir. 2014), *abrogated by Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) (*Manuel I*).

In *Manuel I*, the Supreme Court rejected the Seventh Circuit's analysis that a post-*Gerstein* wrongful detention claim could only be brought pursuant to the due process clause:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. See *supra*, at 917. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.
> …
> [Legal process having gone forward] cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause.

*Manuel I*, 137 S. Ct. at 918-19.

The Court held "If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.* at 919.

Following the Supreme Court's guidance in *Manuel I*, the Seventh Circuit ruled that "It's now clear that a § 1983 claim for unlawful pretrial detention rests exclusively on the Fourth Amendment." *Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019). *Lewis* makes clear that a plaintiff may have a valid Due Process claim as

well, if they are *convicted* based on the fabricated evidence:

> Moreover, misconduct of this type that results in a conviction might also violate the accused's right to due process under the rubric of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Kyles v. Whitley*, 514 U.S. 419 (1995), if government officials suppressed evidence of the fabrication. *Avery [v. City of Milwaukee]*, 847 F.3d [433], 443–44 [(7th Cir. 2017)].

*Lewis*, 914 F.3d at 480.

Plaintiff's due process claim cannot survive Defendants' Motion to Dismiss. His claim is for wrongful pretrial detention, based on fabrication of evidence and suppression of information about the fabrication. He was never convicted; rather, he was acquitted at trial. *Lewis* leaves no doubt that Plaintiff's claim "rests exclusively on the Fourth Amendment." *Id.*[1]

To the extent Count I alleges a due process claim, it is DISMISSED with prejudice.

---

[1]In *McDonough v. Smith*, 139 S. Ct. 2149 (2019), the Supreme Court addressed when a due process claim accrues, when the claim is based on fabrication of evidence, suppression of disclosure of the fabrication, and resultant pretrial detention. The Second Circuit found the claim arose under the Due Process Clause. The Court assumed without deciding that that approach was appropriate. *Id.* at 2155. So, *McDonough* may indicate that there is yet more nuance to be teased out as to what basis exists for such claims in specific situations. This district court will not disregard the Seventh Circuit's clearly stated interpretation of *Manuel I* based on the Court's mere assumption—rather than holding—that a pretrial detention due process claim may still be viable in certain circumstances.

2.  Motion to Dismiss Count IV as Untimely

Defendants argue that Plaintiff's Count IV, which alleges a conspiracy among the Defendant Officers to deprive Plaintiff of his constitutional rights, must be dismissed as untimely.  Plaintiff responds that the conspiracy claim was timely filed.

A statute of limitations defense is an affirmative defense, so a complaint does not have to anticipate or allege facts to defend against such a defense.  *U.S. Gypsum Co. v. Ind. Gas Co., Inc. et al.*, 350 F.3d 623, 628 (7th Cir. 2003).  An exception to this rule exists when "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."  *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Here, all the necessary dates for the court to rule on Defendants' statue of limitations defense are alleged in the Complaint.  Because accrual of Plaintiff's conspiracy claim was tolled until he was acquitted and released, Defendants' argument fails.

The relevant dates are:

June 12, 2016 – Cox-Bailey is shot and dies.

June 12, 2016, to July 14, 2016 – Defendant Officers obtain fabricated evidence.

July 7, 2016 – Plaintiff is arrested by Defendants Christian and Sumption.

February 3, 2017 – Plaintiff is acquitted and released.

A § 1983 claim borrows the statute of limitations for personal injury claims in the forum state.  *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007).  In Illinois, that period is two

years.  735 Ill. Comp. Stat. 5/13-202.  Federal law is then applied to determine when the

claim accrues.  See *Lewis*, 914 F.3d 472, 478.

A plaintiff alleging officers conspired to violate his constitutional rights requires

the plaintiff to "show an underlying constitutional violation."  *Hurt v. Wise*, 880 F.3d

831, 842 (7th Cir. 2018) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017)),

*overruled on other grounds by Lewis v. City of Chi.*, 914 F.3d 472 (7th Cir. 2019).  "For the

conspiracy claim, plaintiffs must also demonstrate that the defendants agreed to inflict

the constitutional harm."  *Hurt*, 880 F.3d at 842 (citing *Sow v. Fortville Police Dep't*, 636

F.3d 293, 304–05 (7th Cir. 2011)).

Here, the underlying constitutional harm at issue is detention without probable

cause.  "The wrong of detention without probable cause continues for the duration of

the detention.  That's the principal reason why the claim accrues when the detention

ends."  *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*), *cert. denied

sub nom. City of Joliet, Ill. v. Manuel*, 139 S. Ct. 2777 (2019).

> *Manuel II* addressed the accrual question the Supreme Court remanded
> in *Manuel I*, holding that a Fourth Amendment claim for wrongful pretrial
> detention accrues when the detention ceases. 903 F.3d at 669. Two considerations
> supported this conclusion. First, because the constitutional violation is "ongoing"
> rather than "discrete," the claim accrues when the ongoing violation
> ends. *Id.* Second, "a claim cannot accrue until the would-be plaintiff is entitled to
> sue, yet the existence of detention forbids a suit for damages contesting that
> detention's validity." *Id.* at 670 (citing *Preiser v. Rodriguez*, 411 U.S. 475 [] (1973),
> and *Heck v. Humphrey*, 512 U.S. 477 [] (1994)).

*Lewis*, 914 F.3d at 478.

Plaintiff was released on February 3, 2017.  He filed suit on January 1, 2019.
Thus, Plaintiff's Fourth Amendment wrongful detention claim is clearly timely under
*Manuel II* and *Lewis*.  Plaintiff's claim that Defendant Officers conspired to commit that
violation of his constitutional rights must be timely as well, because proving the
constitutional violation is a necessary element of success on the conspiracy claim.  *Sow*,
636 F.3d at 304–05; see also *Caudle v. Illinois*, 2019 WL 1522641, at *4 (N.D. Ill. Apr. 5,
2019) ("the timeliness analysis for accrual of conspiracy actions is the same as that for
the underlying acts"); *Alexander v. City of Danville, Ill.*, 2019 WL 1382488, at *5 (C.D. Ill.
Mar. 27, 2019) ("If Plaintiff's Fourth Amendment claim does not accrue until Plaintiff
was released from detention, it is difficult to see how a conspiracy claim based on the
Fourth Amendment claim accrued before Plaintiff was released from detention."); 
*Howard v. City of Chi.*, 2004 WL 2397281, at *11 (N.D. Ill. Oct. 25, 2004) ("Because we
found [the plaintiff's] claims for coerced confession, failure to intervene and due
process were timely, the conspiracy to deprive him of those rights is also timely.
Moreover, we find that under the *Heck* [*v. Humphrey*, 512 U.S. 427 (1994)] analysis, [the
plaintiff's] conspiracy claim would also be timely.").

Defendants cite *Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988) and *Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009), to support their argument that conspiracy claims accrue
from each overt act in furtherance of the conspiracy, and therefore overt acts "fall off"
as the two year limitations period sweeps over them.  The court finds *Scherer* and *Brooks*
inapposite here.

In *Scherer*, the Seventh Circuit held that conspiracy claims accrue from each overt act in furtherance of a conspiracy, not from the mere continuance of the conspiracy (i.e., not from the "last overt act" in furtherance of the conspiracy). *Scherer*, 840 F.2d at 439. However where, as here, accrual on the underlying constitutional claim is tolled, so too accrual of the conspiracy claim must be tolled for all the reasons discussed above.

In *Brooks*, there is no indication that the plaintiff was detained at all. The parties in *Brooks* did not brief any of the delayed accrual issues raised here, nor did the Seventh Circuit analyze any such issues. Here, the fact of Plaintiff's detention delays accrual of the underlying constitutional tort. *Brooks* is too distinct from this case to guide the outcome. Recent developments in § 1983 law applicable to Plaintiff's claims make clear that his conspiracy claims accrued at the time he was released from custody after acquittal – February 3, 2017. *Lewis*, 914 F.3d at 478.

This suit was filed within two years of that accrual date and is thus timely.

Defendants also argue that Plaintiff's Complaint does not allege enough specificity regarding a conspiracy to meet *Iqbal* and *Twombly*'s plausibility standard. The court finds, taking the factual allegations in the Complaint as true, Plaintiff has plausibly alleged that the Defendant Officers conspired to violate his constitutional rights.

Defendants' Motion to Dismiss Count IV is DENIED.

3.  Motion to Dismiss Count V

Defendants argue that Count V, *respondeat superior* liability alleged against the City of Champaign, must be dismissed because it is not a cognizable claim.  Plaintiff does not respond in support of Count V.

Section 1983 claims cannot be used to hold municipal employers liable under a theory of *respondeat superior*.  "…[M]unicipalities … may be held liable for their own decisions and policies but are not liable under the doctrine of *respondeat superior* for the acts, decisions, and policies of other persons, including subordinate public officials." *Gaston v. Ghosh*, 920 F.3d 493, 494–95 (7th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978)).

Defendants' Motion to Dismiss is GRANTED dismissing Count V with prejudice.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Dismiss (#12) is GRANTED in part and DENIED in part.  Counts I and V of the Complaint are DISMISSED with prejudice.  The rest of the Complaint remains.

(2) This case is referred to the Magistrate Judge for further proceedings in accordance with this Order.

ENTERED this 9th day of  September, 2019.

s/ Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE